UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

WAYNE M. HARTLEY,                    )
                                     )  No. CV-06-0005-MWL
            Plaintiff,               )
                                     )  ORDER GRANTING DEFENDANT'S
v.                                   )  MOTION FOR SUMMARY JUDGMENT
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of Social               )
Security,                            )
                                     )
            Defendant.               )
                                     )

BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on July 17, 2006. (Ct.
Rec. 12, 17).  Plaintiff Wayne Hartley ("Plaintiff") filed a reply
brief on June 28, 2006.  (Ct. Rec. 19).  Attorney Maureen Rosette
represents Plaintiff; Special Assistant United States Attorney
Johanna Vanderlee represents the Commissioner of Social Security
("Commissioner").   The parties have consented to proceed before a
magistrate judge.  (Ct. Rec. 7).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 17)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12).
///

- 1 -

**JURISDICTION**

On March 21, 2002, Plaintiff protectively filed applications for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB"), alleging disability since December 15, 2001,[1] due to acute anti-social disorder, hand numbness, back pain, carpal tunnel and memory problems. (Administrative Record ("AR") 149-152, 172, 447-451). The applications were denied initially and on reconsideration.

An administrative hearing was held on October 15, 2003, before Administrative Law Judge ("ALJ") Mary B. Reed. (AR 42-118). Testimony was taken from Plaintiff, medical expert R. Thomas McKnight, Ph.D, and vocational expert K. Diane Kramer. (AR 42-118). The ALJ issued a decision on July 30, 2004, finding that Plaintiff was not disabled. (AR 21-37). The Appeals Council denied a request for review, and the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on January 6, 2006. (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 51 years old on the date of the ALJ's decision. (AR 22). He completed the eighth grade in school and never acquired a GED. (AR 64). He also completed a six-week course at a vocational

---

[1]Plaintiff originally alleged he became disabled on December 15, 2000; however, at the hearing, Plaintiff, through his counsel, stipulated to an amended onset date of December 15, 2001. (AR 22).

school for auto mechanics in 1973.  (AR 111).  His past relevant work consists of work as a general laborer, a truck driver, a tree trimmer, a construction worker, a greaser and an irrigation installer.  (AR 22, 181).

At the administrative hearing held on October 15, 2003, Plaintiff testified he did not drink alcohol or use street drugs from 1995 until January of 2002.  (AR 46-47).  He stated that, in the 1980's, he used cocaine every payday, spending about $1,500.00 in a year on the habit.  (AR 47-48).  He indicated that his biggest substance problem, however, had been alcohol.  (AR 48). He testified that he attended an 11-month in-house treatment program in 1992 and had consumed a total of only 10 beers since that time.  (AR 54).

Plaintiff stated that he has a criminal record consisting of a 24-month term of imprisonment for selling and possessing marijuana and LSD in the early 1970s and two DUIs in 1984 and 1991.  (AR 51-52).  He was discharged from the military as "undesirable" for the drug crime.  (AR 52).  Plaintiff indicated that he also had been charged with forgery for duplicating a check.  (AR 52-53).

Plaintiff testified that he had never been hospitalized for any kind of mental impairment, depression or suicide attempts and had never attended mental health counseling.  (AR 61).  He indicated that he had difficulty reading, because he could not understand most big words, but he could read a newspaper if he chose to do so.  (AR 65).  He testified that his spelling ability is terrible.  (AR 67).  He can add and subtract but needs the use of a calculator to multiply and divide.  (AR 68).  He stated that

he also has problems with his memory but could recall significant events, just not details. (AR 65). He indicated that he has feelings of hopelessness, depression and anxiety. (AR 99-100). Plaintiff stated that he had attempted suicide on two occasions, once in the mid-1980s by overdosing on cocaine by injection and once by hanging. (AR 103-104).

Plaintiff testified that he last worked in the year 2001. (AR 48-49, 69). He quit that job because of low back pain from carrying 70 pound concrete blocks. (AR 70, 84). He described the back pain as feeling like a Charley Horse in the middle of his back which continues until he lays down. (AR 84-85). He stated that he lays down a couple of times a day, and naps in the afternoon for about two hours. (AR 85-86, 88). He indicated that he naps because he is out of energy or exhausted. (AR 86). Plaintiff testified that his doctors told him that he is tired all the time because he has hepatitis C. (AR 87).

Plaintiff stated that he could sit in a chair for 30 to 40 minutes at a time, stand 20 to 30 minutes at a time, walk about four and one-half blocks at one stretch, could not climb more than one flight of stairs, could lift and carry about eight pounds, and could not bend at the waist. (AR 88, 92, 94-97). With regard to daily activities, Plaintiff testified that he does all of his own housework and chores, like vacuuming and cleaning, and does his laundry about once every two weeks. (AR 104).

Also giving testimony at the administrative hearing held on October 15, 2003, was medical expert R. Thomas McKnight, Ph.D., and vocational expert K. Diane Kramer. (AR 55-60, 113-117).

///

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which

compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and ///

(2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since his alleged (amended) onset date, December 15, 2001. (AR 23). At step two, the ALJ found that Plaintiff has the severe impairments of hepatitis C, degenerative disc disease, and obesity, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 30). The ALJ specifically determined that the record as a whole shows that Plaintiff has no severe mental impairments meeting the 12-month durational requirements of the Act.[2] (AR 30).

---

[2]The ALJ found that Plaintiff's depressive disorder, nos, anxiety disorder, nos, pain disorder associated with both psychological factors and a general medical condition and antisocial and passive-aggressive personality

The ALJ concluded that Plaintiff has the RFC to perform light exertion work, he can only occasionally climb ramps and stairs, occasionally stoop, crouch and crawl, should avoid climbing ladders, ropes or scaffolds, should avoid work at unprotected heights or where his body would be exposed to vibration and, since he is obese, he is further restricted in his movements.  (AR 34).

At step four of the sequential evaluation process, the ALJ found that Plaintiff is incapable of performing his past relevant work.  (AR 35).  However, the ALJ determined at step five that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of jobs in the national economy which he could perform despite his limitations.  (AR 35-36).  Examples of such jobs include work as a wire repairer, a pole-peeling machine operator, a silk screen-frame assembler, a screen maker, a shingle trimmer, a stock-parts inspector, a routing clerk, a lab-sample carrier, and a cashier II.  (AR 35-36).  Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 36-37).

///

///

///

///

---

traits cause no more than mild limitations on his activities of daily living, social functioning, and concentration, persistence or pace and he has no episodes of decompensation.  (AR 30).  Accordingly, the ALJ found that Plaintiff's mental impairments do not impose more than minimal limitations on his ability to perform work-related functions.  (AR 30).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, he argues that:

1.    The ALJ improperly determined at step two of the sequential evaluation process that Plaintiff's mental impairment was non-severe;

2.    The ALJ erred by rejecting Dr. Rosekran's opinions and instead relying on the opinions of the medical expert, Dr. McKnight;

3.    The ALJ erred by finding Plaintiff not credible; and

4.    The ALJ erred by concluding that Plaintiff retained the physical RFC to perform light exertion work activity.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.  Plaintiff's Credibility**

Plaintiff argues that the ALJ's opinion that Plaintiff is not fully credible is not properly supported.  (Ct. Rec. 13, pp. 15-16).  Plaintiff asserts that his testimony should be credited because no specific, clear and convincing reasons were provided to discredit his testimony.  (Ct. Rec. 13, p. 16).  The Commissioner responds that the ALJ properly evaluated Plaintiff's credibility and provided clear and convincing reasons to reject his statements.  (Ct. Rec. 18, pp. 15-18).  The undersigned agrees.

///

///

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ determined that Plaintiff's testimony was not totally credible. (AR 30). In support of this finding, the ALJ indicated several reasons, including the following: (1) the record reveals inconsistent reporting by Plaintiff regarding his drug use; (2) Plaintiff's claim of problems with reading was refuted by displaying his ability to read at the administrative hearing and his ability to complete the MMPI-2 on several occasions which requires an ability to read; (3) Plaintiff's psychological testing (invalid scores on several MMPI-2 exams) casts doubt on his credibility regarding his physical and mental complaints; (4) the medical and other evidence of record does not support his claim of debilitating limitations; (5) his activities of daily living are

inconsistent with his allegations of disability; (6) his

complaints of memory problems is not substantiated by testing;

(7) a former employer indicated that, at the end of 2001,

Plaintiff was performing heavy laborer-type work for about six

hours per day; and (8) Plaintiff has been inconsistent reporting

on other matters, including his education, military and criminal

history. (AR 30-32).

As noted above, the ALJ is responsible for reviewing the

evidence and resolving conflicts or ambiguities in testimony.

*Magallanes*, 881 F.2d at 751. If evidence supports more than one

rational interpretation, the Court must uphold the decision of the

ALJ. *Allen*, 749 F.2d at 579. It is the role of the trier of

fact, not this Court, to resolve conflicts in evidence.

*Richardson,* 402 U.S. at 400. After reviewing the record, the

undersigned judicial officer finds that the ALJ's rationale for

discounting Plaintiff's subjective complaints provide sufficient

support for the ALJ's conclusion that Plaintiff was not totally

credible. Accordingly, the undersigned finds that the ALJ did not

err by concluding that Plaintiff's allegations regarding his

limitations were not fully credible in this case. (AR 30-32, 36).

**B.  Severe Mental Impairment**

Plaintiff argues that the ALJ erred by concluding that

Plaintiff does not have a severe mental impairment. (Ct. Rec. 13,

pp. 8-13). Plaintiff asserts that the psychological evaluations

completed by Ms. Lowderback, Dr. Toews and Mr. Moua and Ms.

Lyszkiewicz, both under the supervision of Dr. Rosekrans, provided

evidence of the existence of a severe mental impairment. (Ct.

Rec. 13, pp. 9-13). The Commissioner responds that the ALJ

properly found that Plaintiff had no severe mental impairment that would endure for 12 or more months as required by the Act. (Ct. Rec. 18, pp. 6-15).

The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. Plaintiff has the burden of proving that he has a severe impairment. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that he is disabled. 20 C.F.R. § 416.912(a). In the absence of objective evidence to verify the existence of an impairment, the ALJ must reject the alleged impairment at step two of the sequential evaluation process. SSR 96-4p.

In this case, the ALJ concluded at step two of the sequential evaluation process that Plaintiff has the severe impairments of hepatitis C, degenerative disc disease, and obesity. (AR 30). The ALJ specifically noted that Plaintiff also has mental impairments; namely, a depressive disorder, nos, an anxiety disorder, nos, a pain disorder associated with both psychological factors and a general medical condition and antisocial and passive-aggressive personality traits, but that these impairments were not "severe" as they did not impose more than minimal limitations on his ability to perform work-related functions. (AR 30).

///

Counselor Ger Moua, M.S., evaluated Plaintiff on February 18, 2002. (AR 294-295). Mr. Moua diagnosed cocaine dependence, early full remission, antisocial personality disorder, and borderline intellectual functioning and indicated the MMPI-2 results were inconclusive suggesting that Plaintiff may have exaggerated his symptoms as a plea for help or secondary gains. (AR 295). Mr. Moua found that Plaintiff did not exhibit any significant cognitive deficits but indicated that his personality style would likely interfere with his ability to make decisions and judgments. (AR 295). Mr. Moua filled out a form indicating that Plaintiff had several moderate and mild functional limitations as well as marked limitations in his ability to relate appropriately to co-workers and supervisors, interact appropriately in public contacts and respond appropriately to and tolerate the pressures and expectations of a normal work setting. (AR 299-302). Mr. Moua opined that mental health treatment would likely restore or improve his ability to work, and his symptoms were expected to last a maximum of 12 months. (AR 302). Mr. Moua's report was adopted by supervising psychologist Frank Rosekrans, Ph.D. (AR 295, 302).

The ALJ properly rejected Mr. Moua's limitations as being based on Plaintiff's non-credible self-report.[3] (AR 33). The ALJ noted that the MMPI-2 was not valid on examination and, other than Plaintiff's self-report of difficulties, Mr. Moua's narrative indicates that the exam was essentially normal. (AR 33). The ALJ also notes that the reports were completed by a counselor and co-

---

[3]As indicated in Section A, the ALJ's credibility finding is supported by the evidence of record and free of error. *Supra*.

signed only by Dr. Rosekrans, and Dr. Rosekrnas did not have the full medical record to review.[4]  (AR 33).  The ALJ properly discounted Mr. Moua's report.

On March 19, 2002, Samantha Lowderback, A.R.N.P., completed a psychiatric assessment of Plaintiff.  (AR 319-320).  Ms. Lowderback diagnosed Plaintiff with an antisocial personality disorder, cocaine dependency, early full remission, and an anxiety disorder.  (AR 320).  She noted that Plaintiff's intellect appeared to be about average and he was capable of articulating his needs and history reasonably.  (AR 320).

Ms. Lowderback continued to see Plaintiff and noted on June 7, 2002, that Plaintiff had been working on a car project and reported that the medication Seroquel was "very helpful" in controlling his agitation and anxiety.  (AR 404).  Plaintiff continued to complain of anxiety and irritability, but Ms. Lowderback opined that his memory, insight and judgment continued to be normal over a period of time.  (AR 404-416).

The ALJ discounted Ms. Lowderback's opinions indicating that, while Plaintiff was being treated for subjective complaints of depression and anxiety, these impairments were not assessed as severe, Ms. Lowderback continuously reported normal memory, good eye contact, organized and slightly anxious characteristics, and there was no indication of any significant abnormalities.  (AR 33).  The ALJ noted that Ms. Lowderback did not perform any psychological testing and noted that Plaintiff's self-reports were

---

[4]Although non-physicians working under supervision are to be treated as teams, *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996), there is no evidence that Mr. Moua regularly consulted with or was closely supervised by Dr. Rosekrans.

considered not fully credible (thus limitations assessed based on his self-report were suspect).  (AR 33-34).  Moreover, the undersigned finds it significant to note that Ms. Lowderback is neither a physician nor a licensed or certified psychologist. Therefore, her testimony and opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security regulations.  20 C.F.R. §§ 404.1513, 416.913. The ALJ properly discounted her findings.

On July 13, 2002, state agency reviewing physician, John McRae, Ph.D., opined that Plaintiff's mental impairments were not expected to last at a severe level for 12 months.  (AR 303-317). Dr. McRae noted that Plaintiff was able to work at substantial gainful activity for many years despite his personality disorder and opined that Plaintiff would be able to continue substantial gainful work, away from the public and most coworkers, by December of 2002.  (AR 315).

On October 11, 2002, state agency reviewing physician, Gerald Gardner, Ph.D., also opined that Plaintiff's mental disorders were not expected to last at the severe level for 12 months.  (AR 336-349).  Dr. Gardner indicated that Plaintiff's anxiety and agitation had shown improvement on medication, Plaintiff had shown an ability to keep appointments and interact with others to some degree despite claims of limited ability to be around others, and Plaintiff was expected by December of 2002 to further improve with appropriate medication and be able to carry out work away from close contact with others, with some limits on attention and concentration for extended periods.  (AR 348).

///

On June 23, 2003, Plaintiff was examined by Shari
Lyszkiewicz, M.A. (AR 396-402). Ms. Lyszkiewicz diagnosed
schizoid personality disorder, with antisocial features, and
obesity and gave Plaintiff a Global Assessment of Functioning
("GAF") score of 50.[5] (AR 397). The results of the MMPI-2 were
invalid due to Plaintiff's overreporting of his symptoms. (AR
397). Ms. Lyszkiewicz indicated that the results of the MMPI-2
were indicative of a patient who is endorsing as many symptoms as
possible for some type of gain. (AR 397). Nevertheless, Ms.
Lyszkiewicz found that Plaintiff's symptoms were so pervasive that
it was doubtful he could be successful in most jobs. (AR 398).
Ms. Lyszkiewicz also filled out a form indicating that Plaintiff
had several limitations including marked limitations in his
ability to relate appropriately to co-workers and supervisors and
interact appropriately in public contacts. (AR 399-402). Ms.
Lyszkiewicz opined that mental health treatment would not likely
restore or improve his ability to work. (AR 402). Ms.
Lyszkiewicz's report was adopted by supervising psychologist Frank
Rosekrans, Ph.D. (AR 295, 402).

The ALJ properly rejected the limitations assessed by Ms.
Lyszkiewicz and adopted by Dr. Rosekrans, since those limitations
were based on Plaintiff's non-credible self-report.[6] (AR 33).
The ALJ noted that the MMPI-2 was not valid on examination and,
other than Plaintiff's self-report of difficulties, the narrative

---

[5]A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation,
severe obsessive rituals, frequent shoplifting) or any serious impairment in
social, occupational, or school functioning (e.g., no friends, unable to keep
a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

[6]As indicated in Section A, the ALJ's credibility finding is supported
by the evidence of record and free of error. *Supra*.

section of the report indicates that the exam was essentially normal. (AR 33). The ALJ also notes that the report was completed by a counselor and only co-signed by Dr. Rosekrans.[7] (AR 33). The ALJ properly discounted Ms. Lyszkiewicz's report.

At the administrative hearing held on October 15, 2003, R. Thomas McKnight, Ph.D., gave testimony regarding Plaintiff's medical condition. (AR 55-60). Dr. McKnight testified that he questioned the validity of Plaintiff's self-report, based on the evidence of record, and found Mr. Moua's diagnosis of antisocial personality disorder "a really questionable diagnosis." (AR 57). Dr. McKnight noted that the MMPI tests consistently assessed over-reporting. (AR 58-59). He indicated that the MMPI results invalidated the whole process and indicated that the individual was over-reporting a variety of difficulties. (AR 59). Dr. McKnight indicated that a new examination and additional testing was necessary (AR 59), and, consequently, the ALJ requested the same (AR 27-28).

On November 14, 2003, Jay M. Toews, Ed.D., completed a psychological assessment of Plaintiff. (AR 421-429). Dr. Toews indicated that Plaintiff's attention and concentration were well within normal limits, his basic fund of information was extremely good given his education level, his judgment and insight were good, and cognitive testing indicated that Plaintiff was functioning in the average range. (AR 424-425). The MMPI-2

---

[7]Although non-physicians working under supervision are to be treated as teams, *Gomez*, 74 F.3d at 971, there is no evidence that Ms. Lyszkiewicz regularly consulted with or was closely supervised by Dr. Rosekrans. In addition, as noted by the ALJ, when comparing this report with the earlier report adopted by Dr. Rosekrans, the diagnoses differ significantly from one report to the other. (AR 33).

profile reflected a significantly over reporting response style raising questions about the validity of the clinical profile. (AR 425). Dr. Toews opined that there was no indication of cognitive or memory deficits that would interfere with employment in a wide variety of occupations. (AR 426). Dr. Toews additionally opined that Plaintiff's problems did not appear to be more than mild and were not interfering with cognitive functioning or memory. (AR 426). He diagnosed Plaintiff with a depressive disorder, nos, mild, an anxiety disorder, nos, mild, a pain disorder associated with both psychological factors and GMC, probable, cocaine abuse in early remission by self-report, antisocial and probable passive-aggressive personality traits, cervical and lumbar pain, hepatitis C, and cirrhosis by history, gave Plaintiff a GAF score of 60,[8] and assessed only slight limitations with Plaintiff's functional ability. (AR 426-429).

As noted above, the ALJ provided adequate rationale for discounting the opinions of Mr. Moua (as adopted by Dr. Rosekrans), Ms. Lowderback, and Ms. Lyszkiewicz (as adopted by Dr. Rosekrans). *See supra*. The ALJ accorded weight to Dr. Toews' report, finding his thorough evaluation supported a conclusion that Plaintiff's mental impairments were non-severe. (AR 34). Dr. Toews' report is supported by the weight of the record evidence, the testimony of Dr. McKnight, as well as the reports of the state agency reviewing physicians. Plaintiff has failed in his burden of proving that he has a severe mental impairment in

---

[8]A GAF of 51 to 60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks), OR moderate difficulty in social, occupational, or school function (e.g. few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994)

this case.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A),
416.912 (Plaintiff has the burden of proving that he has a severe
impairment).  The substantial weight of the record evidence
supports the ALJ's conclusion that Plaintiff does not have a
mental impairment that significantly limits his ability to do
basic work activities.  Therefore, the ALJ did not err by
determined that Plaintiff had no severe mental impairment that
would endure for 12 or more months as required by the Act.  (AR
30).

## C.  Physical RFC

     Plaintiff also contends that the ALJ erred by finding that
Plaintiff retained the RFC for light exertion work activities.
(Ct. Rec. 13, pp. 13-15).  Plaintiff specifically asserts that the
ALJ failed to provide specific and legitimate reasons for
rejecting the medical opinions of Ms. Ponti and Drs. Porter and
Johnston.  (Ct. Rec. 13, pp. 13-15).  The Commissioner responds
that the ALJ properly evaluated the medical evidence.  (Ct. Rec.
18, pp. 18-20).

     The courts distinguish among the opinions of three types of
physicians:  treating physicians, physicians who examine but do
not treat the claimant (examining physicians) and those who
neither examine nor treat the claimant (nonexamining physicians).
Lester v. Chater, 81 F.3d 821, 839 (9th Cir. 1996).  A treating
physician's opinion is given special weight because of his
familiarity with the claimant and his physical condition.  Fair v.
Bowen, 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is
given to a treating physician than an examining physician.
Lester, 81 F.3d at 830.  However, the treating physician's opinion

is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

On February 19, 2002, Julie Porter, M.D., completed a physical evaluation of Plaintiff. (AR 265-266). On this check-box form,[9] Dr. Porter indicated that Plaintiff would be limited to sedentary work. (AR 266). However, Dr. Porter opined that

---

[9]A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

Plaintiff would be unable to perform at least half-time in a
normal day-to-day work setting for only 20 weeks.  (AR 266).
Accordingly, Dr. Porter's assessed limitations would not meet the
duration requirements of the Act (one year).  42 U.S.C. §
1382c(a)(3)(A).  In addition to not meeting the requirements for
disability under the Act, the ALJ appropriately gave Dr. Porter's
one-time evaluation "little weight" as the report was very brief,
based on Plaintiff's non-credible self-reports (*see* Section A,
*supra*) and merely a check-box report with little explanation for
the bases of the conclusions.  (AR 32).

On June 18, 2003, Julie Ponti, P.A.C., completed a physical
evaluation of Plaintiff.  (AR 394-395).  Although Ms. Ponti also
limited Plaintiff to sedentary work (AR 395), Ms. Ponti opinions
do not qualify as "medical evidence . . . from an acceptable
medical source" as required by the Social Security regulations.
20 C.F.R. §§ 404.1513, 416.913.[10]  Furthermore, Ms. Ponti opined
that Plaintiff could be released for work in 24 weeks and
estimated that Plaintiff would be unable to perform at least half-
time in a normal day-to-day work setting for only 24 weeks.  (AR
395).  Accordingly, Ms. Ponti's assessed limitations would not
meet the duration requirements of the Act (one year).  42 U.S.C. §
1382c(a)(3)(A).  Finally, it was appropriate for the ALJ to give
this report little weight as it was also merely a check-box report
with little explanation for the bases of the conclusions made
therein, *Crane*, 76 F.3d at 253, and it was based on Plaintiff's
non-credible self-report.  (AR 32).

---

[10]Although the report was co-signed by J. Troiano, M.D., there is no
evidence that Ms. Ponti regularly consulted with or was closely supervised
by this physician.

On June 25, 2004, Plaintiff's treating physician, Dagmar Johnston, M.D., completed a physical evaluation of Plaintiff. (AR 443-445). Dr. Johnston diagnosed Plaintiff with degenerative joint disease of the lumbar and cervical spine and opined that Plaintiff was severely limited, i.e., unable to lift at least two pounds or unable to stand and/or walk. (AR 445). The ALJ noted that Plaintiff was using a cane initially, and a walker at later visits, but that the walker had not been prescribed. (AR 33). The ALJ gave Dr. Johnston's assessment no weight because it appeared to be based primarily on Plaintiff's non-credible self-report of pain and tenderness and was not substantiated by exam. (AR 33). The ALJ indicated that Dr. Johnston's objective examination was largely normal. (AR 29-30, 33).

The ALJ thoroughly summarized the record in detail (AR 23-34) and concluded that the credible evidence of record supported the finding that Plaintiff retained the RFC to perform light exertion work, but that he should only occasionally climb ramps and stairs, should only occasionally stoop, crouch and crawl, should avoid climbing ladders, ropes or scaffolds, should avoid work at unprotected heights or where his body would be exposed to vibration and, since he is obese, he is further restricted in his movements (AR 34).

This RFC finding is supported by the credible evidence of record. On May 11, 2004, Plaintiff's treating physician, Tisha Farrell, M.D., reported that Plaintiff's biggest complaint was insomnia and then feeling anxious and irritated due to lack of rest, not a complaint of near paralysis as essentially assessed by Dr. Johnston. (AR 440, 445). On June 9, 2004, Plaintiff reported

difficulty with walking, however, on examination, Dr. Farrell reported "[n]o acute findings in the lumbar area" and noted that Plaintiff appeared in no acute distress, although he seemed uncomfortable with movement. (AR 441). Moreover, state agency reviewing physician, Morris Fuller, M.D., concluded on October 11, 2002, that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds and stand and/or walk and sit about six hours in an eight-hour workday. (AR 328-335). Finally, Plaintiff's treating physician, Paul M. Craig, M.D., reported on September 17, 2002, that while Plaintiff had "some chronic musculoskeletal complaints," he was noted as "comfortable" at the time of the exam. (AR 363-364).

The substantial weight of the record evidence supports the ALJ's RFC determination. The ALJ provided specific, legitimate reasons for discounting the opinions of Ms. Ponti and Drs. Porter and Johnston and properly determined Plaintiff's physical RFC based on the credible record evidence, including the opinions of Drs. Farrell, Fuller and Craig. It is not the role of this Court to second-guess the Commissioner. The Court must ultimately uphold the Commissioner's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Based on the foregoing, there is no error with regard to the ALJ's physical RFC determination. The substantial evidence of record supports the ALJ's conclusion that Plaintiff is capable of performing light exertion work with the additional limitations noted by the ALJ. (AR 34).

///

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is able to perform work that exists in significant numbers in the national economy is supported by substantial evidence and free of legal error. Therefore, Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 12**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 17**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

IT IS SO ORDERED.

**DATED** this __15th__ day of September, 2006.

                    s/Michael W. Leavitt
                MICHAEL W. LEAVITT
            UNITED STATES MAGISTRATE JUDGE